<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| CHRISTOPHER BENTLEY, | : | |
| | : | Civil Action No. 06-4157 (RBK) |
| Petitioner, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| CHARLES E. SAMUELS, JR., | : | |
| Warden, | : | |
| | : | |
| Respondent. | : | |

**APPEARANCES:**

      CHRISTOPHER BENTLEY, Petitioner <u>pro</u> <u>se</u>
      #15746-018
      FCI Fort Dix
      P.O. Box 7000
      Fort Dix, New Jersey 08640

**KUGLER**, District Judge

    This matter is before the Court on petitioner Christopher

Bentley's ("Bentley") application for habeas corpus relief under

28 U.S.C. § 2241,[1] challenging an immigration detainer issued

against him.  The respondent is Charles E. Samuels, Jr. the

Warden at F.C.I. Fort Dix.

---

    [1]  Section 2241 provides in relevant part:
(a) Writs of habeas corpus may be granted by the
Supreme Court, any justice thereof, the district courts
and any circuit judge within their respective
jurisdictions.
(c) The writ of habeas corpus shall not extend to a
prisoner unless-- ... (3) He is in custody in violation
of the Constitution or laws or treaties of the United
States ... .

For the reasons stated herein, the Petition will be
dismissed.  See 28 U.S.C. § 2243 ("A court ... entertaining an
application for a writ of habeas corpus shall forthwith award the
writ or issue an order directing the respondent to show cause why
the writ should not be granted, unless it appears from the
application that the applicant or person detained is not entitled
thereto.").

## BACKGROUND

Bentley is currently a federal inmate confined at FCI Fort
Dix.  On October 30, 1992, he was sentenced by the United States
District Court for the Eastern District of New York to a 240-
month prison term.  While in custody of the Federal Bureau of
Prisons ("BOP"), a Detainer Action Letter was lodged against him
on April 19, 1995 by the Immigration and Naturalization Service.[2]
The detainer remains on file while Bentley is serving his federal
prison term.

Bentley states that the immigration detainer subjects him to
deportation proceedings upon expiration of his sentence.  The

---

[2]  Effective March 1, 2003, the Immigration and
Naturalization Service ("INS") ceased to exist as an agency of
the Department of Justice, and its functions were transferred to
the Department of Homeland Security ("DHS").  See Homeland
Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov.
25, 2002).  The Bureau of Immigration and Customs Enforcement of
the DHS is responsible for the interior investigation and
enforcement functions that formerly were performed by the INS

detainer also prevents him from participating in the residential drug rehabilitation program and early release programs.

Bentley is a native and citizen of Jamaica. He entered the United States on February 21, 1984 as a permanent resident alien in the sole care and custody of his father, Lloyd Bentley and step-mother, Madeline Bentley. Before Bentley's eighteenth birthday, his father became a naturalized U.S. citizen. Accordingly, Bentley contends that he automatically acquired U.S. citizenship by operation of law.

It appears that Bentley seeks to have the immigration detainer lifted. It also appears that he is challenging the manner in which his sentence is being executed by the BOP, namely, that the BOP is using the immigration detainer to preclude him from participation in early release programs.

## **ANALYSIS**

A.  <u>Claim to Lift the Immigration Detainer</u>

Federal courts have jurisdiction to entertain an application for habeas relief only if a petitioner is "in custody," pursuant to the challenged judgment, in violation of the Constitution or laws or treaties of the United States.[3] <u>Maleng v. Cook</u>, 490 U.S. 488, 490-91 (1989); <u>Obado v. New Jersey</u>, 328 F.3d 716, 717

---

[3] In making a custody determination, a court looks to the date that the habeas petition was filed. <u>See</u> <u>Carafas v. LaVallee</u>, 391 U.S. 234, 238-40 (1968); <u>Chong v. District Director, I.N.S.</u>, 264 F3d 378, 382-83 (2001).

(2003); 28 U.S.C. § 2241(c).  But Supreme Court decisions have made it clear that habeas corpus "is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose-- the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty."  <u>Jones v. Cunningham</u>, 371 U.S. 236, 243 (1963). Thus, the "in custody" requirement is satisfied where an individual is subject to "significant restraints on liberty ... which were not shared by the public generally," along with "some type of continuing governmental supervision," even if the individual is not subject to actual physical restraint.  <u>See</u> <u>Obado</u>, 328 F.3d at 717 (citations omitted).

In this vein, some federal courts have held that an alien who is not physically detained, but who is subject to a final order of removal, suffers sufficient restraint on his freedom to satisfy the custody requirement of § 2241.  <u>See</u>, <u>e.g.</u>, <u>Ceballos de Leon v. Reno</u>, 58 F. Supp.2d 463, 469 n.14 (D.N.J. 1999) (collecting cases).  Alternatively, an alien who is confined pursuant to a criminal conviction, and who is subject to an INS detainer which seeks mere notification in advance of release, may not satisfy the custody requirement.  <u>See</u> <u>Green v. Apker</u>, 153 Fed. Appx. 77, 79 (3d Cir. 2005)(unpubl.) ("According to most courts which have considered the custody question, a prisoner who is serving a criminal sentence is not in B[ureau of] I[mmigration

and] C[ustoms] E[nforcement] custody simply because the BICE has lodged a detainer against him with the prison where he is incarcerated.")(citing <u>Garcia-Echaverria v. United States</u>, 376 F.3d 507, 510-11 (6th Cir. 2004); <u>Zolicoffer v. United States Dep't of Justice</u>, 315 F.3d 538, 540-41 (5th Cir. 2003)).

Similarly, in this case, Bentley is a federal prisoner in the custody of the BOP while serving his criminal sentence, but is subject to an immigration detainer that merely seeks notification in advance of his release from prison.  Therefore, Bentley does not satisfy the "in custody" requirement for habeas relief to lift the detainer.  Accordingly, this claim should be dismissed for lack of jurisdiction.

B.  <u>Due Process and Equal Protection Claims</u>

Bentley also seems to suggest that the immigration detainer lodged against him violates due process because it prevents him from participating in residential drug rehabilitation programs or early release programs.  This claim involves the manner in which Bentley's sentence is being executed by the BOP.  For the reasons set forth below, this incidental effect of the immigration detainer on Bentley's eligibility for program participation does not violate any constitutional right to due process or equal protection.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself

or enacted law.  <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983);

<u>Asquith v. Department of Corrections</u>, 186 F.3d 407, 409 (3d Cir.

1999).  With respect to convicted and sentenced prisoners, "[a]s

long as the conditions or degree of confinement to which the

prisoner is subjected is within the sentence imposed upon him and

is not otherwise violative of the Constitution, the Due Process

Clause does not in itself subject an inmate's treatment by prison

authorities to judicial oversight."  <u>Montanye v. Haymes</u>, 427 U.S.

236, 242 (1976), <u>quoted in</u> <u>Hewitt</u>, 459 U.S. at 468 and <u>Sandin v.

Conner</u>, 515 U.S. 472, 480 (1995).

It is well established that a prisoner possesses no liberty

interest arising from the Due Process Clause in a particular

custody level or place of confinement.  <u>See</u>, <u>e.g.</u>, <u>Olim v

Wakinekona</u>, 461 U.S. 238, 245-46 (1983); <u>Hewitt</u>, 459 U.S. at 466-

67; <u>Meachum v. Fano</u>, 427 U.S. 215, 224-25 (1976); <u>Montanye</u>, 427

U.S. at 242.

Governments, however, may confer on prisoners liberty

interests that are protected by the Due Process Clause.  "But

these interests will be generally limited to freedom from

restraint which, while not exceeding the sentence in such an

unexpected manner as to give rise to protection by the Due

Process Clause of its own force, nonetheless imposes atypical and

significant hardship on the inmate in relation to the ordinary

incidents of prison life."  <u>Sandin</u>, 515 U.S. at 484 (finding that

disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). Bentley does not allege either that some statute confers a liberty interest in being free from the constraints imposed against prisoners subject to an immigration detainer or that the conditions under which he is confined present "atypical and significant hardships." Thus, Bentley cannot establish any deprivation of his liberty interests under the Due Process Clause.

"The existence of a detainer, by itself, ordinarily does not affect the inmate's program. An exception may occur where the program is contingent on a specific issue (for example, custody) which is affected by the detainer." BOP Program Statement 5322.11 § 524.13. Thus, several programs prohibit participation by persons subject to detainer. See, e.g., BOP Program Statement 5280.08 § 570.35 ¶ 10.f. ("The Warden may not ordinarily grant a furlough to an inmate with a detainer."). These program regulations are a proper exercise of discretion by the BOP.

For example, the regulation limiting participation in the early release program established in 18 U.S.C. § 3621(b) has withstood challenge by persons subject to immigration detainers. Section 3621(b) requires the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines

7

has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). As an incentive for prisoners to successfully complete the program, "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B). Pursuant to these statutory sections, and in an exercise of the discretion vested in the Director of the BOP, the BOP has promulgated regulations prescribing certain additional early release criteria, inter alia excluding inmates with immigration detainers from consideration for early release. See 28 C.F.R. § 550.58(a)(1)(I). This is the type of program limitation that Bentley mentions in his habeas petition.

In Lopez v. Davis, 531 U.S. 230 (2001), the Supreme Court held that it was a proper exercise of discretion by the BOP to categorically deny eligibility for early release to prisoners with "a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses," 28 C.F.R. § 550.58(a)(1)(iv), or to prisoners whose current offense is one of certain enumerated felonies involving the use or attempted use of force, or involving the carrying, possession, or use of a firearm or other dangerous weapon, or involving sexual abuse upon children, 28 U.S.C.

8

§ 550.58(a)(1)(vi).  In reaching this conclusion, the Court first

noted that the language of § 3621(e)(2)(B) grants the BOP

discretion to reduce a prisoner's sentence for successful

completion of a substance abuse treatment program, but fails to

define any parameters by which the BOP should exercise that

discretion.

> In this familiar situation, where Congress has enacted
> a law that does not answer "the precise question at
> issue," all we must decide is whether the Bureau, the
> agency empowered to administer the early release
> program, has filled the statutory gap "in a way that is
> reasonable in light of the legislature's revealed
> design."  We think the agency's interpretation is
> reasonable both in taking account of preconviction
> conduct and in making categorical exclusions.

Lopez, 531 U.S. at 242 (citing, inter alia, Chevron, U.S.A., Inc.

v. National Resources Defense Council, Inc., 467 U.S. 837, 842

(1984))(other citations omitted).  Thus, "the statute's

restriction of early release eligibility to nonviolent offenders

does not cut short the considerations that may guide the Bureau."

Lopez, 531 U.S. at 242.  See also Magnin v. Beeler, 110 F.

Supp.2d 338 (D.N.J. 2000) (upholding 28 C.F.R. §550.58(a)(1)(vi),

before Lopez, as a valid exercise of the Bureau's discretion).

The Court of Appeals for the Eighth Circuit has stated that

it sees no difference between the categorical exclusion examined

by the Supreme Court in Lopez v. Davis and the categorical

exclusion of prisoners subject to an INS detainer in 28 C.F.R.

§ 550.58(a)(1)(I), holding that the latter is also within the

BOP's discretion.  See United States v. Lopez-Salas, 266 F.3d
842, 848 (8th Cir. 2001).  Here, the BOP programs involving
transfer, halfway house, or camp, are ones in which "custody" is
a consideration, similar to the early release program, and
Bentley has not suggested any reason why it is unreasonable for
the BOP to take into account an immigration detainer in
determining eligibility for such programs.  This Court agrees
with the Eighth Circuit that the existence of an immigration
detainer is a legitimate factor to consider in determining
eligibility for custody-related programming.

        Finally, the exclusion of persons subject to an immigration
detainer does not violate the Equal Protection Clause.
Regulations such as those challenged here classify prisoners as
those who are subject to custodial considerations (including
those who have detainers lodged against them) and those who are
not, not on the basis of alienage.  See McLean v. Crabtree, 173
F.3d 1176, 1185-86 (9th Cir. 1999), cert. denied, 528 U.S. 1086
(2000).  Accordingly, "the Equal Protection Clause requires only
that the classification rationally further a legitimate state
interest."  See Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

        Excluding prisoners subject to detainers or other custodial
considerations from participation in programs involving custody
issues is rationally related to the BOP's legitimate interest in
preventing such prisoners from fleeing.  See McLean v. Crabtree,

10

173 F.3d at 1185-86.  Accordingly, the immigration detainer, and the program limits it triggers, do not violate the Equal Protection Clause.

### CONCLUSION

For the reasons set forth above, Petitioner's claim seeking to lift his immigration detainer so that he can be released from custody upon expiration of his sentence must be dismissed, without prejudice, for lack of jurisdiction.  Alternatively, his claim that the immigration detainer violates due process and equal protection by prohibiting him from early release programs will be dismissed for lack of merit.  An appropriate order follows.

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated: September 13, 2006

11